IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

**GARY CHRISTOPHER FORD,**

        Petitioner,

vs.

**JAMES MCKINNEY, Warden,**

        Respondent.

**No. 11-CV-3009-DEO**

**ORDER**

_____

Currently before the Court is the Plaintiff's Petition requesting habeas relief under 28 U.S.C. § 2254. The Plaintiff, Gary Christopher Ford [hereinafter Mr. Ford], is currently incarcerated at the Fort Dodge Correctional Facility pursuant to a conviction for first-degree robbery and felon in possession of a firearm. Docket No. 1. The parties appeared telephonically for a hearing on February 28, 2013. After listening to the parties' arguments, the Court took the matters under consideration and now enters the following:

**I.  FACTUAL BACKGROUND**

As set forth in the Defendant's brief, the basic factual background of this case is as follows:

Mr. Ford and Adibey Habhab were staying at the Fort Dodge Quality Inn the night of April 18, 2007, in a room rented by "Gene Smith." Trial Tr. p. 152, line 1 – p. 158, line 17; p.

170, lines 14-23; PCR Appendix Citation [hereinafter "App."] 22-28, 40. A security tape showed Petitioner leaving room 135 at 8:31 p.m. wearing a long brown shirt and white shoes. Trial Tr. p. 281, line 14 - p. 289, line 22; App. 53-61; see also State's Trial Ex. 47. At 8:50 p.m., an armed man robbed "Karen's Wine and Spirits" while wearing a nylon-stocking mask; knee-length brown T-shirt; long, cuffed blue jeans; and white Nike flat-bottomed tennis shoes with brown laces. Trial Tr. p. 124, line 1 - p. 128, line 16; App. 15-19; State's Exs. 1, 2, 3, 4, 5, 6. See also, Ford v. State, 2010 WL 4105619, 1 (Iowa Ct. App. 2010). He left in a dark, mid-size car. Trial Tr. p. 129, line 24 - p. 130, line 22; App. 20-21. There was trial testimony that it takes two minutes and fifteen seconds driving at legal speeds to get from the liquor store to the Quality Inn. Trial Tr. p. 301, lines 5-24; App. 71.

The Quality Inn security tape shows Mr. Ford returning to his room at approximately 8:53 p.m. to 8:55 p.m., in a long brown shirt, jeans and white shoes. Trial Tr. p. 289, line 23 - p. 293, line 5; App. 61-65. See also State's Trial Ex. 47. The hotel security tape shows that at 9:00 p.m., Adibey Habhab

2

returns, and at 9:25 p.m. both she and Mr. Ford depart the hotel. Trial Tr. 295, line 12 - p. 299, line 12; App. 66-70. See State's Trial Ex. 47.

The following morning, a security camera at a convenience store next door to the Quality Inn shows Mr. Ford wearing white shoes with a Nike "swoosh," knee-length brown t-shirt, and a brown hooded sweatshirt. Trial Tr. p. 178, line 4 - p. 182, line 13; App. 41-45.

Fort Dodge police detective Brad Wilkins viewed security camera footage taken at the liquor store that had been robbed. Officer Wilkins thought he recognized Mr. Ford as the suspect shown robbing the liquor store. Trial Tr. 159, line 11 - p. 161, line 18; App. 29-31. He took particular note of the assailant's oversized brown t-shirt, baggy blue jeans, and white shoes with a "swoosh" and brown laces. Trial Tr. p. 162, lines 6-24; App. 32. He located Adibey Habhab's black Monte Carlo at the Quality Inn and eventually went into the hotel. Trial Tr. p. 164, line 8 - p. 165, line 12, p. 167, lines 10-22; App. 34-35, 37.

Inside, he spotted Mr. Ford, wearing a hooded sweatshirt, knee-length brown t-shirt, and brown-laced Nike shoes. Trial

Tr. p. 167, line 5 - p. 168, line 13; p. 214, lines 13-22;
App. 37-38, 47. Officer Wilkins called Mr. Ford, who rushed
into his room, locked the door behind him, and remained there
for about ten minutes (though he did peek out another exit
door). Trial Tr. p. 168, line 14 - p. 170, line 2; App.
38-40. A subsequent search yielded a black handgun. Trial
Tr. p. 183, lines 10-23; App. 46. Officer Wilkins reported
Mr. Ford told police he had been at a "lady's" house with
Adibey all day and all night and had never left. Trial Tr. p.
216, line 19 - p. 217, line 6; App. 48-49. In an offer of
proof, Officer Wilkins reported that Adibey Habhab said she
and Mr. Ford had been at the hotel the entire night and had
not left until after the time of the robbery. Trial Tr. p.
239, line 3 - p. 240, line 12; App. 51-52.

**II.  PROCEDURAL HISTORY**

On May 31, 2007, Mr. Ford was charged by the State of
Iowa with Robbery in the First Degree, Possession of a Firearm
as a Felon, and as a Habitual Felon. From the time of the Mr.
Ford's initial appearance until August 8, 2009, he was
represented by attorney Jim Koll of the State Public
Defender's Office. However, a conflict of interest arose

4

between Mr. Ford and another one of the Mr. Koll's clients. Mr. Koll had to withdraw as the defendant's counsel.[1]   On August 8, 2009, attorney Wendy Samuelson was appointed to represent Mr. Ford.

On August 28, 2007, ten days after Ms. Samuelson was appointed to Mr. Ford's case, a jury trial commenced.[2]   On August 29, 2007, the jury found Mr. Ford guilty of Robbery in the First Degree.  Following his conviction for robbery, Mr. Ford plead guilty to Possession of a Firearm by a Felon pursuant to an Alford plea.  The Iowa Court sentenced Mr. Ford to 25 years on the Robbery charge, and five years on the firearm charge, with the sentences to run concurrent with each other.

On October 4, 2007, Mr. Ford filed a notice of appeal. The Iowa Supreme Court dismissed his appeal as frivolous on

---

[1]   According to the record, this conflict arose when Mr. Ford talked to the police against Mr. Koll's advise, and implicated another of Mr. Koll's clients.

[2]   In those ten days, Ms. Samuelson attempted to convince Mr. Ford to allow her to continue the case, but he refused.

5

May 1, 2008.  Order, Iowa Supreme Court, No. 07-1739, May 1,
2008.[3]

On July 30, 2008, Mr. Ford filed an application for post
conviction relief, the Iowa state court precursor to a habeas
appeal.  Judge Bice, an Iowa state court judge sitting in
Webster County, Iowa, heard arguments on Mr. Ford's post
conviction relief case July 16, 2009. Attorney James McCarthy
represented Mr. Ford.

At the time of hearing, Mr. McCarthy narrowed the scope
of the post conviction application to two primary arguments.
Mr. McCarthy argued that Mr. Ford had ineffective assistance
of counsel because his trial counsel failed to file and
present a perceived alibi defense, and trial counsel failed to
follow up and investigate the perceived alibi defense.

On July 17, 2009, Judge Bice denied Mr. Ford's
application for post conviction relief.  Judge Bice stated:

> The record in the underlying case indicates
> that Mr. Ford was competently represented
> by Jim Koll of the Public Defender's Office
> from the time of initial appearance
> (4/20/07) until the time of this counsel's

---

[3]    The Iowa Supreme Court also allowed Mr. Ford's
appellate counsel to withdraw because of the frivolous nature
of his appeal.

withdrawal from this case on August 8, 2007. Mr. Koll testified in the present postconviction relief matter by deposition. Mr. Koll testified that he considered the proposed alibi defense and the giving notice of same but that he was not convinced that, because of inconsistencies and time line problems, this defensive tactic was valid. He shared these concerns with Wendy Samuelson, who was eventually appointed to represent Mr. Ford at trial. Ms. Samuelson's appointment was made on August 20, 2007. The matter proceeded to trial on August 28, 2007. Ms. Samuelson also testified at the hearing of Applicant's claim for postconviction relief. Although pressed for time due to her appointment as Mr. Ford's trial counsel on short notice prior to the trial, she worked diligently and thoroughly during the impending time frame to prepare for Mr. Ford's trial. She met with Mr. Ford on nearly a daily basis to prepare for trial.

Docket #17, Att. 1, p. 5. Judge Bice also cited testimony gathered from a hearing on August 23, 2007. At that pre trial hearing, Ms. Samuelson, Mr. Ford's recently appointed attorney, made a record in open court. Ms. Samuelson stated that she felt it was in Mr. Ford's best interest to continue the trial date, but Mr. Ford refused to continue the trial and wanted to proceed. Iowa state court Judge Allen Goode questioned Mr. Ford directly, and Mr. Ford confirmed he wanted to proceed to trial not withstanding his counsel's advice.

Relying on that record, Judge Bice stated:

> Given this record, this Court FINDS that the decision to proceed to trial, notwithstanding the advice of his counsel, was that of Applicant/Defendant. That being the case, Mr. Ford cannot now be heard to complain of his counsel not having spent the time to further develop the perceived alibi defense. Further, defense counsel's decision not to pursue the alibi defense, given the potential problems associated with this possible tactic, do not rise to the level cf ineffect1ve assistance of counsel. See <u>Fryer v. State</u>, 325 N.W.2d 400 (Iowa 1982).
>
> It is axiomatic that an unsuccessful defense does not mean that counsel was ineffective. See <u>Hall v. State</u>, 360 N.W.2d 836 (Iowa 1985). The Court finds that neither Jim Koll nor Wendy Samuelson breached an essential duty as defense counsel to Mr. Ford. Their performance was well within the range of "normal" competency. See <u>Snethen v. State</u>, 308 N.W.2d 11, 14 (Iowa 1981). In that regard, the Court further FINDS that Applicant herein has failed to meet his burden of proof by a preponderance of the evidence... Ms. Samuelson directly and Mr. Koll indirectly indicate that raising the alibi defense would not have made any difference in the outcome of the trial and the Court so FINDS in that regard. As a result, the claims of Mr. Gary C. Ford for postconviction relief must fail.

Docket #17, Att. 1, p. 7-8.

8

Mr. Ford then appealed his application for postconviction relief. On October 20, 2010, the Iowa Court of Appeals affirmed Judge Bice's ruling. The Court of Appeals analyzed the testimony of Mr. Ford's trial counsel, stating that:

> Samuelson stated, "[Koll's] investigator had looked into the alibi defense and it didn't "time-wise, the witnesses weren't able to make it tight enough for it to be real effective." Samuelson also recalled conversations she had with Ford about potential alibi witnesses and the inconsistencies in those witnesses' statements. As to one witness, Adibey Habhab, who claimed to be with Ford "all day and night" on the date of the robbery, Samuelson testified that Ford agreed prior to trial that Habhab was now estranged from him and "too much of a loose cannon" to put before the jury. Samuelson further testified that Ford's insistence on proceeding to trial as scheduled, rather than agreeing to a continuance, prevented her from presenting the alibi defense.

Ford v. State, 791 N.W.2d 430 (Iowa Ct. App. 2010). In a footnote, the Appeals Court noted:

> Habhab stated she and Ford stayed at the hotel the entire night. Her statement conflicts with Ford's assertion that he and Habhab were at another lady's house all day and night. Both statements further conflict with Bonita Urich's purported statement that Ford was at her house only

after 9:00 p.m. Video security tapes show Habhab and Ford coming and going to and from the hotel throughout the evening.

*Ford*, 791 N.W.2d at Fn.1. Further, the Appeals Court reiterated Judge Bice's reliance on trial counsel's testimony, stating that:

> [Ms. Samuelson] testified that she urged Ford to agree to a continuance, as she did not feel she would have sufficient time to further investigate and depose witnesses beyond the work Ford's previous attorney, Koll, had accomplished: "[M]y understanding is is that -and especially since depositions were taken of the defense witnesses, that, um, the State would then have the opportunity to depose any defense witnesses. Adibey had already been deposed, but Bonita Urich wouldn't have been. Those things would not have coincided very well with Mr. Ford's wish to go to trial within a week.

*Ford*, 791 N.W.2d at 430. The Appeals Court concluded that "[w]e agree with the post-conviction court's fact findings and agree with its conclusion that trial counsel breached no essential duty." *Ford*, 791 N.W.2d at 430.

On March 7, 2011, Mr. Ford filed a pro se petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus with this Court. Docket # 1. His initial petition included an application to proceed in forma pauperis. Docket No. 1. Subsequently, Mr.

10

Ford filed an additional pro se motion requesting the appointment of counsel. On October 17, 2011, the Court granted Mr. Ford's application to proceed in forma pauperis and to appoint counsel. The Court appointed attorney Douglas Roehrich to represent Mr. Ford.

On February 2, 2012, Mr. Roehrich filed an application to withdraw as Mr. Ford's counsel, stating that "[t]he grounds raised by the Petitioner in his 2254 Petition are frivolous, and the undersigned has found no nonfrivolous grounds for relief." Docket #9. On September 26, 2012, hearing was held on Mr. Roehrich's Motion to Withdraw, and he agreed to continue to represent Mr. Ford. Mr. Ford filed a brief on October 5, 2012, and the state responded on October 19, 2012.

## III. ISSUES

In his brief, Mr. Ford renews his argument that trial counsel failed to perform an essential duty by neglecting to pursue an alibi defense.[4]

---

[4] The Court notes that Mr. Ford's pro se filings discuss several other issues. Additionally, during the hearing, Mr. Ford argued that certain jurors at his trial knew the prosecutor, Ms. Samuelson's Motion for a Mistrial should have been granted, and that the evidence did not support the argument that someone could make it from the liquor store to the hotel in three minutes. However, the only issue exhausted

## IV. STANDARD

28 U.S.C. § 2254(a) provides that a federal court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

A Federal court's review of a State court decision under § 2254 is deferential. <u>Lomholt v. Iowa</u>, 327 F.3d 748, 751 (8th Cir. 2003). A State court decision on the merits should not be overturned unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the

---

by the lower courts is the ineffective assistance of counsel claim. Under the exhaustion requirement, a habeas petitioner challenging a state conviction must first attempt to present his claim in state court. <u>Harrington v. Richter</u>, 131 S. Ct. 770, 787 (2011) citing 28 U.S.C. § 2254(b; see also <u>Clay v. Norris</u>, 485 F.3d 1037, 1038-1039 (8th Cir. 2007). Accordingly, the ineffective assistance claim relating to trial counsel's failure to explore or call alibi witness is the only issue this Court can consider. Additionally, as to the travel distance from the hotel to the liquor store, the Court notes that evidence came in at the trial that a trip from the liquor store to the hotel took two minutes and fifteen seconds. See Trial Tr. p. 301, lines 5-24; App. 71.

facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A State Court decision contains an unreasonable application of Supreme Court law if it makes "a conclusion opposite that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Lomholt, 327 F.3d at 752 (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). A State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). In order to overcome this presumption, Mr. Ford must show "by clear and convincing evidence that the state court's . . . factual findings do not enjoy support in the record." Lomholt, 327 F.3d at 752 (citing 28 U.S.C. § 2254(e)(1)).

Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Harrington, 131 S. Ct. at 786-87 citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner

13

must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement. Harrington, 131 S. Ct. at 786-87.

## V.  ANALYSIS

### A.  Deficient Assistance

"[T]he right to counsel is the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 (1970).  The Fourteenth Amendment Due Process Clause guarantees the right to a fair trial.  Strickland v. Washington, 466 U.S. 668, 684-85 (1984).  The Sixth Amendment guarantees the right to assistance of counsel.  U.S. Const. Amend. VI.  In Strickland, the Supreme Court elaborated on the relationship between the Fourteenth and Sixth Amendments:

> The benchmark for judging any claim of
> ineffectiveness must be whether counsel's
> conduct so undermined the proper
> functioning of the adversarial process that
> the trial cannot be relied on as having
> produced a just result.

466 U.S. at 686.  The moving party must demonstrate two components to establish ineffective assistance of counsel:

14

(1) counsel's conduct was deficient, and (2) prejudice. Strickland, 466 U.S. at 687. Counsel's conduct is deficient when it is unreasonable "under prevailing professional norms." Padilla v. Kentucky, 130 S. Ct. 1473, 1481 (2010). A showing of prejudice requires that "counsel's errors" be so serious that they "deprive the defendant of a fair trial . . . ." Strickland, 466 U.S. at 687. In other words a Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability does not require a different outcome be proven by a "preponderance of the evidence" but does require "a probability sufficient to undermine confidence in the outcome." Id.

In this case, Mr. Ford argues his trial counsel was deficient for failing to pursue an alibi defense. As noted above, typically to prevail on an ineffective assistance claim, a petitioner must show that his attorney's "performance was deficient" and that "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. In evaluating an attorney's performance, the reviewing court "must indulge a

15

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689.[5]

As noted above, Mr. Ford's trial counsel, Ms. Samuelson, was pressed for time because her appointment was only 10 days before the scheduled trial date. Mr. Ford refused to waive his right to a speedy trial and he refused to agree to a continuance. By his actions, Mr. Ford forced Ms. Samuelson to proceed to trial without allowing her more time to prepare a defense. Nevertheless, the record reflects that Ms. Samuelson worked diligently and thoroughly to prepare for trial; and she met with the defendant on a nearly daily basis. Indeed, a thorough review of the trial transcripts shows absolutely no failure on Ms. Samuelson's part to zealously represent her

---

[5] As the Supreme Court has stated: "[i]f this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Cf. <u>Felker v. Turpin</u>, 518 U.S. 651, 664 (1996) (discussing AEDPA's 'modified res judicata rule' under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)(some internal citations omitted).

client in spite of his forcing her hand to proceed to trail on short notice. Similarly, a review of the record shows no deficiency regarding Mr. Koll's representation of Mr. Ford. Mr. Koll filed appropriate motions to supress, investigated and then interviewed potential witnesses.

Additionally, as noted by the lower courts, both Ms. Samuelson and Mr. Koll evaluated Mr. Ford's potential alibi defense and made the strategic decision that it would hurt, not help, Mr. Ford. As has been stated repeatedly by the Courts, "strategic decisions [are] virtually unchallengeable unless they are based on deficient investigation." Worthington v. Roper, 631 F.3d 487, 500 (8th Cir. 2011) cert. denied, 132 S. Ct. 763 (U.S. 2011). This conclusion is supported by the record.

Mr. Ford told Mr. Koll about three alibi type witnesses: Gene Smith, Bonita Urich (or Eritch), and Adibey Habhab. Koll Depo. p. 7, line 18 - p. 8, line 4; App. 118. There is no further record regarding Gene Smith's potential testimony, other than Mr. Koll's statement that he felt confident Gene Smith could be located, because his office briefly represented Smith in a separate case. Koll Depo. p. 17, line 13 - p. 18,

line 24; App. 121. Mr. Koll's investigator contacted Bonita Urich. Koll Depo. p. 8, lines 1-22; App. 118. Mr. Koll thought Bonita Urich's testimony might be helpful. However, Mr. Koll felt her testimony would not be conclusive, because she said Mr. Ford had been at her house from 9:00 p.m. until 2:00 a.m. or 3:00 a.m. Koll Depo. p. 8, lines 1-22, p. 9, line 19 - p. 10, line 3; App. 118-19. Accordingly, her statement did not rule out the possibility that Mr. Ford committed the robbery before he came to her house.

Mr. Koll's deposition of Adibey Habhab indicated that she might also be helpful, but her testimony suffered from the fact that it was possibly inconsistent with the defendant's story. Koll Depo. p. 10, line 4 - p. 11, line 8; App. 119. For example, Mr. Koll noted, if Adibey "stuck with" the story, she told police that they had been at the hotel all night, it would have been "devastating" to an alibi that they had been at Bonita's Urich's. Koll Depo. p. 24, line 25 - p. 26, line 4; App. 122-23. Additionally, Ms. Samuelson testified that Adibey's deposition statements were inconsistent with what she told police, were contradicted by the hotel video, and Adibey had become estranged from Mr. Ford. PCR Tr. p. 12, lines

18

12-14, p. 13, lines 4-17, p. 25, line 13 - p. 27, line 11;
App. 92, 93, 99-101. Ms. Samuelson testified she discussed it
with Mr. Ford and they agreed not to call Adibey as a witness
at the trial. PCR Tr. p. 12, lines 22-25, p. 24, lines 19-21;
App. 92, 98.

It is clear to the Court that the attorneys had to make
a strategic decision regarding the potential alibi. Mr. Koll
and later Ms. Samuelson faced a "balancing act" between trying
to prove Mr. Ford's whereabouts, as opposed to attacking the
surveillance videos to show "it can't be him." Koll Depo. p.
26, lines 5-16; App. 123. Ultimately, the two attorneys met
to discuss the alibi defense. PCR Tr. p. 11, line 19 - p. 12,
line 11; p. 46, line 16 - p. 47, line 21; App. 91-92, 113-14.
The attorneys agreed the alibi was not "tight enough for it to
be real effective." PCR Tr. p. 12, lines 1-11, p. 15, lines
1-17; App. 92, 94. This was a valid strategic decision. To
wit, had the attorneys decided to present these alibi
witnesses, a hypothetical 23 U.S.C. 2254 Petition might attack
that decision, on the ground that counsel should not have
pursued a flawed alibi defense at the expense of more credible
arguments. Urich's testimony did not preclude the possibility

19

that Mr. Ford committed the robbery, and Habhab's testimony (if she could have been persuaded to testify) conflicted with Mr. Ford's statement that they had been at Urich's. (As well as the video footage). Counsel exercised sound legal discretion in decided against pursuing an alibi defense.

Accordingly, Mr. Ford's claim that he received deficient assistance of counsel fails.

## B. Prejudice

Additionally, even if Mr. Ford could show deficient assistance for failing to pursue an alibi defense, there is no evidence that failing to pursue an alibi defense prejudiced the outcome of the trial. As discussed above, to prove ineffective assistance under <u>Strickland</u>, Mr. Ford must show both deficient counsel and that the deficiency resulted in prejudice. A showing of prejudice requires that "counsel's errors" be so serious that they "deprive the defendant of a fair trial . . . ." <u>Strickland</u>, 466 U.S. at 687. In other words a Petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694; see also <u>Harrington</u>, 131 S. Ct.

20

770, 787, stating that "[t]o have been entitled to relief from the California Supreme Court, [the petitioner] had to show both that his counsel provided deficient assistance and that there was prejudice as a result."

In this case, substantial evidence supported Mr. Ford's conviction. First, security footage from the hotel shows Mr. Ford wearing the same clothes as the suspect on surveillance video from the liquor store. Additionally, the Ft. Dodge police arrested Mr. Ford wearing those same clothes. Next, security camera footage at the hotel showed him leaving the hotel shortly before the robbery and arriving back shortly after the robbery. Officer Wilkins of the Ft. Dodge police department recognized Mr. Ford from the liquor store security camera footage. Finally, a firearm similar to the one used in the robbery was found hidden in the toilet in Mr. Ford's hotel room. Based upon that strong, and relatively undisputed evidence, there is no reasonable probability the result of the proceeding would have been different even if the defense had presented the alibi witnesses discussed above.

## VI.    CONCLUSION

For the reasons set out above, Mr. Ford's application for habeas relief under 28 U.S.C. § 2254 is denied.

**IT IS SO ORDERED** this 18th day of June, 2013.

_____
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa